**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KRISSIE ZIIFLE ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 26-2131** |
| **GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY** | **SECTION I** |

## ORDER AND REASONS

Before the Court are two motions: defendant Garrison Property and Casualty Insurance Company's ("Garrison") motion[1] to acknowledge the automatic stay imposed by La. Rev. Stat. § 22:1892.2(C)(7), and the parties' joint motion[2] for approval and entry of a consent judgment, which the Court construes as a joint motion to stay this matter pursuant to La. Rev. Stat. § 22:1892.2(C)(7). For the following reasons, both motions are denied.

## I. BACKGROUND

Garrison issued plaintiffs Krissie and Matt Ziifle ("the Ziifles") an insurance policy covering their residence in Covington, Louisiana.[3] On September 11, 2024, Hurricane Francine damaged the insured property.[4] The Ziifles allege that Garrison has failed to properly compensate them for the damage pursuant to their policy.[5] On

[1] R. Doc. No. 6.
[2] R. Doc. No. 7.
[3] R. Doc. No. 1-2 ¶¶ 5–6.
[4] *Id.* ¶¶ 7–8.
[5] *Id.* ¶ 20.

July 6, 2026, the Ziifles sent Garrison "a formal proof of loss seeking payment of $77,332.57."[6] But the Ziifles claim to have received only $16,739.[7]

The Ziifles then filed the present action on August 19, 2026, in Louisiana state court.[8] The Ziifles allege that Garrison breached the insurance policy by failing to fully and timely compensate them for the damage from Hurricane Francine.[9] In addition, the Ziifles seek statutory penalties pursuant to La. Rev. Stat. § 22:1892.2 ("§ 1892.2") on the basis that Garrison's actions were "arbitrary, capricious, and without probable cause."[10]

On September 22, 2026, Garrison removed the case to this Court.[11] On September 28, 2026, Garrison filed a motion to stay this case pursuant to § 1892.2.[12] Garrison argues that the automatic stay provision of § 1892.2 requires the Court to stay this case for sixty days because the Ziifles' proof of loss did not constitute proper notice pursuant to the statute.[13] On October 7, 2026. the Ziifles sent Garrison a notice that both parties acknowledge is proper.[14] On October 13, 2026, the Ziifles and Garrison filed a joint motion to stay this case pursuant to § 1892.2.[15] The parties

---

[6] *Id.* ¶ 21.
[7] *Id.* ¶ 48.
[8] *Id.* at 1.
[9] *Id.* ¶¶ 29–39
[10] *Id.* ¶ 41
[11] R. Doc. No. 1.
[12] R. Doc. No. 6.
[13] R. Doc. No. 6-1, at 3–5.
[14] R. Doc. No. 7, at 1.
[15] R. Doc. No. 7.

argue that § 1892.2 requires the Court to stay this case for sixty days from the Ziifles' October 7 notice, until December 6, 2026.[16]

On October 15, 2026, the Court ordered the parties to file memoranda explaining whether the stay provision of § 1892.2 applies to proceedings in federal court or if it is displaced by the Federal Rules of Civil Procedure.[17] The parties filed memoranda arguing that the automatic stay provision of § 1892.2 binds the Court.[18] On October 28, 2026, the Court and the parties spoke via telephone.[19] The Court indicated it would deny the parties' motions.[20] Garrison filed an answer on October 29, 2026.[21]

## II. LEGAL STANDARD

### A. Section 1892.2

Section 1892.2 establishes a framework by which insurers in Louisiana must compensate insureds for catastrophic losses.[22] For policies covering residential

---

[16] *Id.* at 3.
[17] R. Doc. No. 9.
[18] R. Doc. Nos. 10, 11.
[19] R. Doc. No. 13, at 1.
[20] *Id.*
[21] R. Doc. No. 12.
[22] There is no dispute that the Ziifles suffered a catastrophic loss. Pursuant to § 1892.2, a loss is catastrophic if it "arose from a natural disaster, windstorm, or significant weather-related event that was a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster." La. Rev. Stat. § 22:1892(B)(1)(C)(i). The President of the United States declared Hurricane Francine to be an emergency and a major disaster, and it prompted the governor of Louisiana to declare a state of emergency. *See Louisiana; Emergency and Related Determinations*, 89 Fed. Reg. 84910 (Oct. 24, 2024) (notice of presidential declaration of emergency); *Louisiana; Major Disaster and Related Determinations*, 89 Fed. Reg. 97025 (Dec. 6, 2024) (notice of presidential declaration of major disaster); La. Exec.

property, insurers must "transmit payment of the amount of any claim due to any insured within sixty days after receipt of satisfactory written proof of loss." La. Rev. Stat. § 22:1892.2(A)(2). Failure to do so, if "arbitrary, capricious, or without probable cause," subjects an insurer to penalties. *Id.* § 1892.2(B)(1). However, as "a condition precedent to bringing an action" to recover those penalties, the insured must provide the insurer with "sixty days' written notice of the violation by the insured or his representative" ("cure period notice"). *Id.* § 1892.2(C)(1). As another section of this Court has explained,

> Insurers have a major incentive to "cure" the alleged violation by paying the amount alleged in the proof of loss together with actual expenses and attorney's fees. If the insurer pays the full amount sought in the notice within sixty days, the insured has no further cause of action under section 1892.2, meaning that they cannot seek the 50% penalty otherwise available. If the insurer makes only a partial payment, the penalty on the amount paid is reduced by half. Although the issue of whether the insurer owes penalties if it does not tender payment within the statutory deadline is still a question for the fact finder, section 1892.2 gives insurers at least one avenue to avoid penalties as a matter of law.

*Castro-Rochez v. Allied Tr. Ins. Co.*, No. 25-2431, 2026 WL 472748, at *2 (E.D. La. Feb. 19, 2026) (Zainey, J.) (citations omitted). If a lawsuit is filed prior to the submission of a cure period notice, § 1892.2 provides that it "shall be automatically stayed until sixty days after the cure period notice is received." La. Rev. Stat. § 22:1892.2(C)(7).

---

Order No. JML 24-147 (Sep. 9, 2024) (gubernatorial declaration of state of emergency).

## B. Conflicts Between State Law and the Federal Rules of Civil Procedure

"A federal court entertaining state law claims cannot apply a state law or rule if (1) the state law or rule 'directly collides' with a Federal Rule of Civil Procedure and (2) the Federal Rule 'represents a valid exercise of Congress's rulemaking authority.'" *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 296 (5th Cir. 2016) (alterations omitted) (quoting *Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 4–5 (1987)); *see also Berk v. Choy*, 607 U.S. 187, 192 (2026).

"A state law directly collides with a Federal Rule if it provides a different answer to the question in dispute." *Passmore*, 823 F.3d at 296. This occurs when the state law "imposes additional procedural requirements not found in the [F]ederal [R]ules" or "each specifies requirements for a case to proceed at the same stage of litigation." *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019).

A Federal Rule of Civil Procedure is a valid exercise of Congress's rulemaking authority if it "really regulates procedure," or, in other words, "[i]f it governs only the manner and the means by which the litigants' rights are enforced." *Berk*, 607 U.S. at 198 (internal quotation marks omitted) (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941); then *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (plurality opinion)). So far, the Supreme Court has "rejected every statutory challenge to a Federal Rule that has come before" it. *Id.* at 199 (quoting *Shady Grove*, 559 U.S. at 407 (plurality opinion)).

## III. LEGAL ANALYSIS

The stay provision of § 1892.2 does not apply to proceedings in federal court because it directly collides with at least two valid Federal Rules of Civil Procedure: Federal Rule of Civil Procedure 81(c)(2) ("Rule 81(c)(2)"), which determines when defendants must respond to a removed action, and Federal Rule of Civil Procedure 16(b) ("Rule 16(b)"), which requires courts to issue a scheduling order.[23] These collisions occur because § 1892.2 and Rules 81(c)(2) and 16(b) provide different answers to two questions in dispute: (1) when Garrison must answer or present other defenses or objections to the Ziifles' complaint; and (2) when the Court must issue a scheduling order limiting the time to join other parties, amend the pleadings, complete discovery, and file motions.

Because this action was removed from state court, the first question in dispute is answered by Rule 81(c)(2), which provides that:

> A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:
>
> > (A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief;
> >
> > (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or

[23] The Court notes that other sections of this Court have applied the automatic stay provision of § 1892.2, but none of those orders determined whether it was displaced by the Federal Rules. *See Castro-Rochez*, 2026 WL 472748 (Zainey, J.); *3612 Edenborn, LLC v. Chaucer Ins. Co. DAC*, No. 25-2039, 2026 WL 820376 (E.D. La. Mar. 25, 2026) (Morgan, J.); *Sicilian Foods, LLC v. Atain Specialty Ins. Co.*, No. 26-623, 2026 WL 1689928 (E.D. La. June 11, 2026) (Zainey, J.); *Lou-Con, Inc. v. Arthur J. Gallagher & Co.*, No. 25-2054, 2026 WL 2469984 (E.D. La. Aug. 24, 2026) (Guidry, J.).

(C) 7 days after the notice of removal is filed.

The Ziifles served Garrison on August 28, 2026,[24] and Garrison filed a notice of removal on September 22, 2026.[25] Therefore, Garrison was required to respond to the complaint by September 29, 2026. If this case were to be stayed for sixty days pursuant to § 1892.2, then Garrison would gain additional time to respond beyond the limits in Rule 81(c)(2). Accordingly, § 1892.2 directly collides with Rule 81(c)(2).

The second question in dispute is governed by Rule 16(b), which requires the Court to issue a scheduling order that will "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The Court must "issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared." Fed. R. Civ. P. 16(b)(2). Absent intervening good cause for delay, the Court must issue the scheduling order by November 21, 2026. But, if this case were stayed pursuant to § 1892.2, a scheduling order would not be issued by that date. Therefore, § 1892.2 directly collides with Rule 16(b).

The parties argue that different questions are in dispute. Garrison claims the question is "whether a Federal Rule prescribes competing requirements governing the enforceability of the statutory claim while notice and payment may still eliminate the cause of action or reduce the available penalty."[26] The Ziifles frame the question

---

[24] R. Doc. No. 1 ¶ 9.
[25] *Id.* at 1.
[26] R. Doc. No. 10, at 4.

as "whether proceedings covered by [§ 1892.2] must be stayed when the statutory conditions are satisfied."[27]

Both parties frame the questions at issue too narrowly. It is true that the Federal Rules of Civil Procedure do not expressly forbid the stay required by § 1892.2. "But the test of whether a conflict between the Federal Rules and a state statute exists is . . . whether the Federal Rules in question are sufficiently broad to control the issue before the court." *Klocke*, 936 F.3d at 247 (internal quotation marks omitted) (quoting *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1355 (11th Cir. 2018)). Here, the scope of Rules 81(c)(2) and 16(b) are clearly broad enough to preclude the stay required by § 1892.2 because a stay would prevent the Court and the parties from complying with those Federal Rules of Civil Procedure. "[E]ach specifies requirements for a case to proceed at the same stage of litigation" and these requirements are inconsistent with each other. *Id.* at 245. Section 1892.2 requires a 60-day cure period to elapse before the defendant is required to answer or a scheduling order must be issued. Rules 81(c)(2) and 16(b) do not. Section 1892.2 is therefore displaced by the Federal Rules of Civil Procedure.

The only remaining question is whether Rules 81(c)(2) and 16(b) are "valid exercise[s] of Congress's rulemaking authority." *Id.* at 247–48 (quoting *All Plaintiffs v. All Defendants*, 645 F.3d 329, 333 (5th Cir. 2011)). They undoubtedly are. Rules 81(c)(2) and 16(b) govern the timeline by which litigation must proceed. They regulate only "the judicial process for enforcing rights and duties recognized by substantive

[27] R. Doc. No. 11, at 3.

law and for justly administering remedy and redress for disregard or infraction of them." *Passmore*, 823 F.3d at 298 (quoting *Sibbach,* 312 U.S. at 14). "Although the Rule[s] may have some 'practical effect on the parties' rights,' [they] regulate[] 'only the process for enforcing those rights,' not 'the rights themselves, the available remedies, or the rules of decision.'" *Berk*, 607 U.S. at 199 (2026) (quoting *Shady Grove*, 559 U.S. at 407–08 (plurality opinion)).

In support of a stay, Garrison points to *Baber v. Edman*,[28] a case in which the Fifth Circuit ordered a district court to enter a similar sixty-day stay required by state law. 719 F.2d 122, 123 (5th Cir. 1983). A Texas statute required a medical malpractice plaintiff to provide defendants with a written notice of the plaintiff's intent to sue at least sixty days before filing a lawsuit. *Id.* at 122 n.1. Just before *Baber*, the Texas Supreme Court had held that, if a medical malpractice plaintiff failed to provide notice before suing, the case should be stayed for sixty days. *Id.* at 123. The Fifth Circuit stated that "[t]he notice statute is so intertwined with Texas's substantive policy on medical malpractice actions that, to give that policy full effect, federal courts sitting in diversity must enforce its requirements." *Id.* In light of the Texas Supreme Court's decision, the Fifth Circuit remanded the case with instructions to stay the proceedings for sixty days. *Id.*

However, *Baber* does not control this case. It concerned a different state law, and its reasoning is inconsistent with the Supreme Court's intervening decisions in *Shady Grove* and *Berk*, which the Fifth Circuit recognize as governing conflicts

[28] R. Doc. No. 10, at 1, 7–8.

between state law and the Federal Rules of Civil Procedure. *See Sahs*, 2026 WL 2676596, at *5; *Klocke*, 936 F.3d at 249 (noting that a previous panel of the Fifth Circuit "did not have the benefit of the Supreme Court's compelling decision in *Shady Grove*"). These later cases make it clear that even a state law "intertwined with [the state's] substantive policy" is displaced by a valid Federal Rule of Civil Procedure. *Baber*, 719 F.2d at 123. For example, in *Berk*, the Supreme Court "underscore[d] that 'the substantive nature of [a state] law, or its substantive purpose, *makes no difference*'" to the analysis. 607 U.S. at 199 (second alteration in original) (emphasis in original) (quoting *Shady Grove*, 559 U.S. at 409 (plurality opinion)).[29] Therefore, *Baber* does not support the applicability of § 1892.2 to proceedings in federal court.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that both motions[30] are denied.

New Orleans, Louisiana, November 2, 2026.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

[29] For the same reason, the Court is not persuaded by *Jordan Indus., LLC v. Travelers Indem. Co. of Am.*, No. 7:21-CV-00114, 2022 WL 2719630 (N.D. Tex. Apr. 12, 2022), or *Carrizales v. State Farm Lloyds*, No. 3:18-CV-00086, 2018 WL 1697584 (N.D. Tex. Apr. 6, 2018), which are invoked by Garrison. R. Doc. No. 10, at 8. In both cases, the court ordered a sixty-day stay pursuant to a Texas statute analogous to § 1892.2, reasoning that the statute was applicable to federal proceedings because it was "substantive." *Jordan Indus.*, 2022 WL 2719630, at *3; *Carrizales*, 2018 WL 1697584, at *4. Pursuant to *Berk*, this is not a reason for a federal court sitting in diversity to apply a state law that conflicts with the Federal Rules of Civil Procedure.
[30] R. Doc. Nos. 6, 7.